## LEVI LOW *vs.* JONATHAN M. HECK *et al.*

August Term, 1869.

1. L. files a bill in chancery on a written contract with H., and alleges that H. had not paid him the whole amount of 1000 dollars specified in the contract, but admits that 566 dollars of the same were paid. H. files his answer, and alleges that the whole 1000 dollars were paid, but only shows the payment of other sums than those admitted in the bill, reducing the amount of the 1000 dollars remaining unpaid to 104 dollars, which he fails to show were paid. HELD:

> That the allegation in the answer, that the whole amount was paid, is not conclusive of the payment of the same, where it appears by the vouchers filed with the answer that the whole amount was not paid. And where a cause is heard upon such bill and answer only, it is error in the court below to dismiss the bill, without providing for the payment of the 104 dollars for which there were no vouchers.

2. L., by written contract, sells to H. his mill property, for Iowa lands. H. agrees to deliver to L. the patents for the Iowa lands, some of which the contract states had issued, and the others were to issue. HELD:

> That H., on a bill filed by L. to enforce the contract, ought to be required to show that patents had issued for the lands, and to be required to deliver them to L.; that even an averment by H. in his answer, that the patents had been issued, would not be sufficient, without proof of the issuing of the same.

In April, 1867, Levi Low filed his bill in the circuit court of Monongalia county, against Jonathan M. Heck and others, for the purpose of recovering a balance due Low on a contract for the sale of what is known as the "Low Mill property," situated in the county of Monongalia. Heck being a non resident, an attachment was issued in the cause

---

[*] He had been counsel in the cause below.

and was levied on certain real estate alleged to belong to Heck, and was also served upon certain parties defendant alleged to be indebted to him. It appears from the bill that on the 26th of February, 1858, Low was the owner of the mill property aforesaid, and that at that date, he and Heck made, signed, sealed and delivered a contract for the sale of the mill property and land attached, by which Low sold to Heck the property, which was to pass to the possession of Heck at the time named in the contract, at which time the possession thereof did pass to Heck. In consideration of which, Heck agreed and bound himself to convey to Low, with covenants of general warranty, 800 acres of land in Audubon county, Iowa, valued at 8,000 dollars in gross; the land being described by registered certificates, for which Heck had not then received patents, but which he agreed to convey to Low, by the 10th of March, 1858, and also bound himself to deliver to Low patents for the 800 acres of land, when received. It was further agreed that in the event Heck should not receive patents for any of the tracts of lands, that he should replace such tracts with an equal number of acres of equal value. Heck also, in further consideration for the property, bound himself to pay Low the sum of 2,000 dollars,—1,000 dollars in cash—375 dollars of which was paid down, and the residue was to be paid by the 10th of March, 1858—and the remaining 1,000 dollars to be paid in good paper, to be regularly assigned by the proper persons and Heck, to Low, and which was to be delivered to Low by the 10th of March, 1858; and in further consideration of the property, Heck bound himself to purchase of Low, within two years and six month from the date of the contract, 150 acres of the Iowa land, to be selected by Low out of the whole land so sold—provided that it lay in one body—in case Low elected to sell the same to Heck within that time; and in case Low did so elect, he was to give Heck six months previous notice of the election. Heck also bound himself to be liable to Low for any of the notes, so assigned, that could not be made in a reasonable time, and in case one-half the money

due by the notes aforesaid should not be paid by the 1st of April, 1858, Heck bound himself to pay one-half of the whole of such notes to Low, by the 10th of April, 1858.

Low bound himself to make to Heck a general warranty deed for the mill property, so soon as the residue of the cash payment of 1,000 dollars was paid; that the residue of the cash payment was paid to Low; that he delivered the possession of the Mill property on the 10th or 11th of March, 1858, to Heck, and made him a general warranty deed therefor, which he accepted. Low also bought of Heck, 80 acres more of land in Iowa, and paid him therefor, for which Heck had received no patent, but agreed to obtain it the same as for the other lands. The bill also alleges that Heck never assigned and delivered to Low the notes mentioned in the contract, or any part thereof, and never paid him thereon, except as follows: 300 dollars at the Fairmont bank; 166 dollars paid to Nathan Summers; 100 dollars cash paid per Davidson—making 566 dollars,—and leaving a balance due Low of 434 dollars on said 1,000 dollars to be paid in notes, with interest thereon from the 26th of February, 1858; and that patents never issued to Heck for 360 acres of the Iowa land, and that Low did not know that Heck had any claim or right to expect patents for the 360 acres of land, or any part thereof, and that Heck was making no efforts to obtain the patents, and that he never delivered any patents to Low, for any of the Iowa lands, according to contract; that within the two-and-a-half years from the date of the contract, Low elected to sell to Heck 150 acres of the Iowa land, and that he gave Heck notice thereof six months previous to the expiration of said two-and-a-half years, and that the same was selected out of the whole of said lands; and that he demanded that Heck should take it and pay for it, according to his contract; that the 150 acres, at the price of 10 dollars per acre, amounted to the sum of 1500 dollars; that 70 acres of the 150 acres were embraced in the 360 acres of unpatented land, which left 290 acres of the 360—which, at 10 dollars per acre, the price paid to Heck, made the sum of 2,900 dollars, which

should bear interest from the 26th of February, 1858—all of which made the claim of Low against Heck 4,834 dollars, exclusive of interest.

Answers were made to the bill of Low, by the defendants Jonathan M. Heck, Philip H. Keck, Richard B. Carr, and Martin B. Callendine, (the latter three were garnishees), and the cause came on to be heard at the February term, 1868, of the circuit court of the county of Monongalia, and was heard on the bill, answers aforesaid and exhibits, and the court decreed that Low's bill be dismissed, with costs; from which decree Low appealed to this court, and assigned as error to the dismission of his bill by the circuit court:

That said court ought to have referred said cause to one of its commissioners, instead of dismissing the bill, to inquire what part of the 1,000 dollars which Heck was to pay Low in notes, by the contract, had been paid, and what part had not been paid.

That the court should have compelled Heck to produce and file the patents for the Iowa land, or at least to have required him to prove, by proper testimony, that patents had issued therefor, and on failure to do so, the court should have decreed against Heck, at the rate of 10 dollars per acre, for such lands as he failed to show patents for, with interest from the date of the contract of sale; or the court should have referred the cause to a commissioner, with instructions to inquire and report for what part of the lands patents had issued to Heck, and for what part patents had not issued, with instructions to the commissioner to report so much of the lands unpatented as Heck failed to produce patents for.

*A. F. Haymond* for the appellant.

*P. H. Keck* for the appellees.

MAXWELL, J. The appellant claims that the court below erred in dismissing his bill, because the court ought to have directed a reference to inquire what part of the 1,000 dol-

lars which the defendant Heck was to pay appellant in notes had been paid; and because the court should have compelled defendant Heck to produce and file the patents for the Iowa lands, or at least should have required him to prove that patents had issued therefòr.    The contract shows that 1,000 dollars of the purchase money was to be paid in certain notes at a certain time, and the bill charges that the said notes were not paid according to the contract, or at any other time, but that Heck paid afterwards, at different times, in money, all of the said 1,000 dollars except 434 dollars.

The answer of Heck avers that all of the said sum was paid, and shows the payment of 290 dollars at one time, 40 dollars at another, in addition to what is admitted in the bill, and leaving a balance unaccounted for of 104 dollars. It is insisted here in argument for the appellees, that the allegation in the answer of payment of the entire balance, is conclusive of the payment.    Such an assumption is untenable.    The sum of 104 dollars, at least, is plainly due the appellant on bill and answer, and it was error to dismiss the bill without providing for its payment.

A sufficiently reasonable time having intervened, the appellant, under the terms of the contract, is entitled to have the patents for the 800 acres of Iowa land delivered to him, but the frame of the bill is not sufficient for that purpose; but according to the frame of the bill the defendant Heck ought to have been required to show that patents had issued for that portion of the land for which it is not admitted in the bill that they have issued.    The answer of the defendant is not sufficient for this purpose, even if it contained an averment, as it does not, that patents have issued.

I think the decree complained of ought to be reversed, with costs to the appellant, and the cause remanded for further proceedings to be had therein.


The President concurred.


DECREE REVERSED.